# United States Wind Engine & Pump Company v. James J. Butcher.

## Gen. No. 4,590.

1. EVIDENCE—*when competent, notwithstanding it tends to prove affirmative cause of action not relied upon in declaration.* In an action on the case for personal injuries evidence which tends to show the exercise of ordinary care by the plaintiff is competent, notwithstanding it likewise tends to show an affirmative cause of action not relied upon in the declaration.

Action on the case for personal injuries. Appeal from the Circuit Court of Kane County; the Hon. CHARLES A. BISHOP, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed April 20, 1906.

RAYMOND & NEWHALL, for appellant.

FRANK W. JOSLYN and WAITE JOSLYN, for appellee.

MR. JUSTICE FARMER delivered the opinion of the court.

On the 25th of June, 1903, James J. Butcher, plaintiff below, was engaged in operating a shearing machine, used for the cutting of sheet metal in defendant's factory. The machine is about seven feet long, three feet wide and three feet high, and was operated by steam power. The knife or blade used in cutting the metal hung on a revolving shaft which was connected by pulleys and belting to other shafting. The knife on this machine was operated by a treadle in front and at the bottom of the machine upon which the operator placed his foot to put the knife in motion. From

this treadle a lever extended back under the machine and by means of a connecting rod operated a pin in a clutch in the revolving shaft upon which the blade was hung. The blade moved up and down from two to two and one-half inches when in operation. The operator stood in front of the machine and slipped the sheet metal on the bed of the machine underneath the knife and then pressed down with his foot on the treadle, which released the clutch on the revolving shaft and the blade would fall and rise with the revolutions of the shaft. On the bed of the machine back of the knife were gauges, which could be adjusted so as to cut the metal in any desired width or length. Back of the knife also were supports for holding the material when cut. The machine was so constructed that when the foot was removed from the treadle the knife ceased operating and was held suspended by the clutch before mentioned. At the time of the accident plaintiff was cutting strips of sheet metal from sixteen to twenty inches wide and two and one-half to three feet long, making sails or paddles for machines being manufactured by defendant. The practice was to cut fifteen or twenty sheets before removing the material from back of the knife. On the day mentioned plaintiff placed his left hand underneath the knife to pull out some material back of it, when the knife descended and cut off his fingers. The first finger was cut off just below the middle joint, the second finger at the middle joint, the third finger just below the middle joint and the fourth or little finger had a little of the end cut off.

Butcher brought this suit to recover damages, and filed a declaration consisting of two counts. The first count charged the defendant with neglecting and failing to furnish the plaintiff with safe machinery and appliances properly guarded by protective apparatus for the safety of plaintiff. The second count charged defendant with wrongfully and negligently suffering the machine to become and remain in unsafe condition and repair, that divers of the cogs, wheels and springs with which the shears were operated, were broken, loose, unfastened and worn, and by rea-

son thereof the injury was caused. The jury returned a verdict in favor of plaintiff for $2,500, upon which the court rendered judgment, and defendant brings the case here by appeal.

When the foot of the operator was taken off the treadle a spring forced the clutch into place, and caused the revolving shaft to stop when the knife was up. It is the claim of plaintiff that this spring had become weak, so that it failed to cause the machine to stop when plaintiff took his foot off the treadle, on the day in question, and hence the shaft revolved again, and the knife came down upon his fingers. Upon the question whether the machine was out of repair in that respect, the evidence is conflicting. Montgomery, who often worked upon the machine, testified that frequently, when he was working the machine, the spring failed or the clutch failed to hold, and the shaft made another revolution after he had taken his foot off the treadle. Plaintiff testified that at the time he was hurt his foot was not upon the treadle, and that the shaft revolved and the knife came down without action on his part; and that after he was hurt he looked and saw that the defect was in the weakness of the spring, or that the spring was not strong enough to pull the clutch up and hold it in its place. Johnson was working about ten feet from the machine when plaintiff was hurt. He testified that plaintiff came to him and said his fingers were cut off, and showed them to him, and Johnson looked and saw that plaintiff's machine was still running; and that he went over and put his foot on the treadle several times before he could stop it. If this testimony was true, then the machine was in such a condition that when the operator took his foot off the treadle, the clutch did not always stop the machine, but it sometimes continued to revolve, and the knife then continued to come down and go up. Witnesses for defendant testified the machine was not out of order; and the foreman operated the machine shortly after plaintiff was hurt, and testified that he found it performed its office and worked properly. The question whether defendant knew that the machine was out of repair was disputed.

Montgomery testified that when the clutch failed to hold and the shaft revolved again without his foot upon the treadle, he notified the foreman. The foreman testified that Montgomery did not notify him of that fact, nor did anyone else. Upon the question whether plaintiff knew that the machine would slip or the clutch would not hold at times, the evidence was as follows: This machine was operated only occasionally, when heavy metal was to be cut. Sometimes it was operated only for a few minutes, and sometimes all day. Plaintiff had been there ten or twelve years, and had worked a great deal upon this machine, but he had not worked upon it for nearly a year before the day on which he was hurt, except for a very few minutes on one or two occasions. He testified he had no knowledge that it had ever slipped or failed to hold when the foot was taken off the treadle. No one contradicted this statement. His foreman testified that he had seen plaintiff putting his hand under the knife to take out waste back of the blade, and had warned him not to do it, or had cautioned him that it was dangerous to do so. Plaintiff denied that he had received this advice or information. He claimed the only instruction he had ever had concerning the machine was that when he first went to work upon it he was told to be careful.

In determining whether plaintiff was or was not exercising due care, the jury had before them this contradictory evidence as to whether plaintiff had been warned by his foreman not to put his hands under the knife, and also the circumstances surrounding the duty he had to perform, and the manner in which he could perform it. It was necessary to take out the sheets of metal behind the knife when a certain number had accumulated there; and also, in the operation of cutting the last piece from a sheet of metal there sometimes would be waste left behind the knife which had to be removed. There were five ways that this waste and metal could be removed from behind the knife. It could be taken out from the front by the use of the operator's hand, as was done in this case. There was, at each

end of the machine, an open throat, through which, de-
fendant's testimony ten led to show, this metal and waste
could be removed. Plaintiff's testimony tended to show
that these places could not be used practically, because at
one side another machine was very close to this one; at the
other side a machine stood only three feet away; and at
both sides there was machinery to be encountered, includ-
ing a shaft continuously revolving at one side. The oper-
ator could reach over the top of the knife and remove this
material, but we think the proof fairly warranted the jury
in finding that this was not a practical method. The usual
method for removing the material back of the knife was to
go around behind the machine and take it away. There
was, however, a difficulty about using this method at that
particular time not shown by the photographs in the rec-
ord, which were not taken till a change had been made.
At the time plaintiff was injured, the back of the machine
stood from twenty-four to thirty inches from the wall, and
in that space were two upright posts, bolted to the wall,
and having a size variously estimated by the witnesses at
from eight inches to twelve inches square. One post stood
back of each side of the machine. This made the space
through which the operator had to pass in going behind
the machine, and the space in which he could handle the
metal in taking it out, so much smaller. These posts were
there for a temporary purpose, while a roof was being put
upon the building. Defendant's witnesses admitted that
because of the presence of these posts it was not conven-
ient to take the metal out at the rear. With these circum-
stances existing, the jury found plaintiff was exercising due
care, when, after the shaft had revolved and the knife had
descended and had raised again, he took his foot off the
treadle, and then put his hand underneath the knife to re-
move the metal. The real question in the case is whether
we can say that, under these facts, the proof is so clear that
plaintiff was not exercising due care in putting his hand
underneath the knife, that a verdict for plaintiff ought not
to be permitted to stand. In this connection it is to be

U. S. Wind Engine & Pump Co. v. Butcher.

noted that the mechanical superintendent of defendant testified that with the foot of the operator taken off the treadle, it was impossible that the knife should descend again; and he admitted that if the knife did descend with the foot off the treadle, then the machine was certainly out of order; but he intimated his strong disbelief that the knife did so descend. The evidence of Johnson, joined with that of plaintiff, warranted the jury in finding that it did descend, not only once, but a number of times, with nothing upon the treadle. If the knife had never descended when the foot was taken off the treadle during all the time that plaintiff had operated this machine, and if he had never known of its doing that, then so far as his knowledge of the machine went, the removal of the foot from the treadle caused the clutch to take that position which must hold the knife uplifted. The proof shows that the clutch and pin were made for the very purpose of holding the knife suspended. We cannot say as a matter of law that plaintiff had no right to rely upon the clutch and pin to perform their appointed office. In this state of the proof our conclusion is that we are not warranted in disturbing the conclusion of the jury, approved by the trial judge, upon the question whether plaintiff was exercising due care.

Defendant's chief complaint concerning the rulings of the court is, that the court ought not to have permitted proof of the existence of these posts back of the machine, because it tended to show that defendant had not furnished plaintiff with a safe place in which to work, and such was not the charge in the declaration. If that was the only office which this proof performed, it was error to admit it. But we conclude it was proper for plaintiff to describe the entire situation. The fact that these posts rendered it inconvenient to go behind the machine and remove the metal had a bearing upon the question whether plaintiff was in the exercise of due care. Defendant claimed that there were all these other ways by which plaintiff could have removed the metal, and he had a right to show what the fact was as to the practicability of each of the methods suggested.

Our conclusion is that all the litigated questions were matters of fact, upon which the testimony was conflicting, and that the verdict of the jury, approved by the trial judge, cannot be disturbed upon this record.

The judgment is therefore affirmed.

*Affirmed.*